**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BILLY G. RYE,

    Plaintiff,

vs.                                        CASE NO. 3:06-cv-570-J-TEM

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

_____

**ORDER AND OPINION**

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claim for disability benefits. Plaintiff seeks reversal of the Commissioner's decision with directions for processing of payment, or alternatively, reversal and remand of the decision for clarification. (Doc. #10, pp. 10-11). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

**I. Procedural History**

Plaintiff Billy G. Rye filed for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") on November 4, 2002, alleging disability as of September 22, 2002. (Doc. #10, p. 2). Plaintiff's initial application was denied, as was his request for reconsideration. (Doc. #10, p. 2). Plaintiff timely requested a hearing before Administrative Law Judge ("ALJ") Robert H. Isbel and a hearing was scheduled for

January 13, 2005. (Tr. at 17). Due to Plaintiff's incarceration, however, the hearing was re-scheduled and held on December 15, 2005. (Tr. at 17). On March 29, 2006, the ALJ issued an unfavorable decision. (Doc. #10, p. 2). Subsequently, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (Doc. #10, p. 2).

## II. Statement of the Facts

Plaintiff Billy G. Rye was born on August 27, 1965; he was 40 years old at the time of the ALJ's decision. (Doc. #10, p. 3; Doc. #13, p. 2). Plaintiff has a high school education and previous work experience as an automobile painter, dishwasher, and maintenance worker. (Doc. #10, p. 3; Doc. #13, p. 2). Plaintiff alleged he became disabled on September 22, 2002 as a result of pain stemming from various disorders of his spine that affect his back and neck. (Doc. #10, p. 3). Plaintiff has been diagnosed with failed back syndrome, status post lumbar laminectomy, chronic lower back pain, radiculopathy, and cervical disc disease. (Tr. at 19). The record reflects that Plaintiff is an opiate abuser and that he missed his initial hearing with the ALJ because he was incarcerated for attempting to purchase cocaine. (Tr. at 274, 278, 315).

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ considered the opinion of several state agency medical doctors, one of which found Plaintiff retained a RFC for medium work by stating Plaintiff can lift fifty (50) pounds occasionally and twenty five (25) pounds frequently, stand or walk six (6) hours in an eight (8) hour workday, and sit six (6) hours in an eight (8) hour workday. (Tr. at 230). In his decision, the ALJ stated that he did not give the assessments of the state agency medical doctors controlling weight because he found them to be "somewhat ambitious in their assertions especially in the statements about the claimant being able to lift and carry 50 pounds." (Tr. at 25). In not

2

giving the state agency medical doctors controlling weight, the ALJ found that, even though Plaintiff has significant problems with his spine, Plaintiff can lift more than he maintains. (Tr. at 25). Based on the record and findings, the ALJ assigned Plaintiff a RFC for a limited range of work that falls between the sedentary and light exertional levels as defined by the Social Security Act (the "Act"). (Tr. at 25, 27). Specifically, the ALJ determined that Plaintiff could carrying fifteen (15) to twenty (20) pounds occasionally, less than ten (10) pounds frequently, sit at least four (4) to six (6) hours a day with a sit/stand option, and stand or walk in fifteen (15) minute increments at least two (2) hours in a workday. (Tr. at 25).

On December 20, 2005, a hearing was held before the ALJ. (Tr. at 312-340). At the hearing, Plaintiff testified that he is disabled due to the aforementioned conditions because his back gives him "trouble all the time," he experiences sharp pain if he tries to lift an object, he cannot sleep, and his right leg occasionally "goes out" on him. (Tr. 328). Plaintiff also testified that his wife must sometimes help him out of bed and help him put on his shoes and that he can only walk about forty yards before he must lie down due to pain. (Tr. 328). Plaintiff further testified that he does not work and spends most of the day trying to get comfortable in order to alleviate his pain. (Tr. 328). Plaintiff's pain was being managed by duragesic patches and epidural injections, which Plaintiff stated decreases but does not eliminate his pain. (Tr. at 330; Doc. #10, p. 5).

At Plaintiff's hearing, a medical expert, Dr. Marc Linden, testified that Plaintiff's cervical disc disease is not a significant problem, although it limits his ability to lift and carry objects. (Tr. at 318). Upon examination by the ALJ, Dr. Linden testified that, in his opinion, Plaintiff could sit four (4) to six (6) hours per day and could stand and walk for two (2) hours

out of an eight-hour workday. (Tr. at 319). Dr. Linden further testified that although he believed Plaintiff experiences a certain level of pain, the record reflects that Plaintiff is an opiate abuser and that Plaintiff may have reasons to misrepresent the level of pain he experiences in order to obtain more medication. (Tr. at 322); (*see also* Tr. at 274 where Dr. Perry Cole from the Institute of Pain Management, Jacksonville, Florida stated that, due to the fact Plaintiff is an addict in early recovery, he "cannot be trusted to take oral medications on a regular basis").

The ALJ then examined Vocational Expert ("VE"), Melissa Howell, who was asked to give her opinion as to what jobs exist in the national economy that Plaintiff could perform based on a hypothetical individual with Plaintiff's past work experience, age, education, and who was limited to carrying fifteen (15) to twenty (20) pounds occasionally, less than ten (10) pounds frequently, could sit at least four (4) to six (6) hours a day with a sit/stand option, and stand or walk in fifteen (15) minute increments at least two (2) hours in a workday. (Tr. 333).

The VE testified that given these restrictions, Plaintiff could work in various light job fields such as ticket taker and such sedentary job fields as food and beverage order clerk and envelope addresser. (Tr. 334). The VE testified that available jobs in the aforementioned fields range between 722 and 1232 regionally and between 11,532 and 23,846 nationally. (Tr. 334). The ALJ found that the VE's testimony showed a significant number of jobs exist in the national economy that Plaintiff could perform and concluded Plaintiff was not disabled under the Act. (Tr. at 25-26).

**III. Standard of Review**

A plaintiff is entitled to disability benefits under the Social Security Act when he/she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A) (2006).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 416.920 (a) - (f)[1]; *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g) (2006).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton*, 21 F.3d 1064 at 1066 (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

Plaintiff's sole basis for appeal is his contention that the ALJ's residual functional capacity finding that Plaintiff can sit at least four (4) to six (6) hours per day and stand or walk for at least two (2) hours per day is ambiguous and, thus, precludes a finding that Plaintiff is capable of working full-time because on "bad days" Plaintiff would not be able to work a full eight hours straight.  (Doc. # 10, pp. 9-10).  The alleged ambiguous language

of the ALJ's residual functional capacity determination states in pertinent part:

> The claimant can lift and carry between 15-20 pounds on an occasional basis. His ability to lift and carry less than 10 pounds on a frequent basis remains in tact. I also find that he can sit *at least* 4-6 hours in a day with a sit-stand option and I also find that he is able to stand and walk in 15 minute increments for *at least* 2 hours in a work day.

(Tr. at 25) (*emphasis added*).

A complete reading of the decision and underlying record reveals no ambiguity concerning Plaintiff's RFC assessment. The ALJ's use of the qualifier "at least" indicates that the aforementioned hourly range is a minimum and not a maximum. In the instant matter, the ALJ determined that the Plaintiff's ability to sit, stand or walk would not fall below the hour ranges provided.

In fact, it is apparent from the written decision that the ALJ contemplated only an eight-hour workday in making Plaintiff's RFC determination. When the ALJ found that use of the medical vocational guidelines found in Appendix II of Subpart P of Regulations Numbers 4 and 16 (the "Grids") were inappropriate in Plaintiff's case because he has a limited range of work in the light and sedentary levels, the ALJ specifically referred to "an eight-hour day." (Tr. at 26). At no point in his written decision does the ALJ reference either part-time work or a workday less than eight hours long.[2] The ALJ's specific references an eight-hour day, and failure to state otherwise, demonstrates that he clearly contemplated an eight-hour workday in determining, at Step Five, whether jobs exist in significant numbers that Plaintiff can perform given his age, work experience, and RFC.

---

[2]The Court notes that Plaintiff's counsel questioned the VE concerning the differences between full-time and part-time work (Tr. at 334), but a review of the record in its entirety reveals that at no time did the ALJ refer to part-time work while questioning the medical expert or the vocational expert.

Furthermore, the ALJ only referenced an eight-hour day when soliciting testimony from witnesses at the hearing. (Tr. 319). The ALJ specifically asked the medical expert, Dr. Linden, if his finding that Plaintiff could stand for two (2) hours a day was in reference to an eight-hour workday–to which Dr. Linden responded in the affirmative. (Tr. at 319). When Plaintiff's attorney cross-examined the VE and asked her a question concerning a hypothetical individual who could only work six (6) hours per day instead of eight (8), the VE confusingly responded "Well, what you're saying preclude[s] full-time employment." (Tr. at 334). This indicates that she only contemplated a full-time work schedule while testifying before the ALJ.

Plaintiff relies on *Badlow v. Apfel*, 205 F.3d 356 (8th Cir. 2000) in support of his argument that the ALJ's RFC determination is ambiguous. (Doc. # 10 at 9-10). Reliance on this case, however, is unpersuasive for several reasons. For instance, in *Badlow,* an occupational therapist presented evidence that the plaintiff in that case "could perform medium level work if given a more diminished schedule such as two hours a day with a gradual increase to four" and that the plaintiff "may tolerate the four-hour work day and gradually increase his work hours if returned to a light level position." *Badlow*, 205 F.3d at 358 (*internal quotations omitted*).

In the instant case, Plaintiff was neither found to be limited to a four-hour workday by medical experts or treating physicians, nor does it appear from the record that the ALJ ever contemplated Plaintiff being limited to part-time work while making his final determination of non-disability. (*See* Tr. at 219, 230, 304, 309). Furthermore, in *Badlow*, when the ALJ solicited testimony from the vocational expert, the questions posed primarily related to a hypothetical individual who was limited to working between four (4) and six (6)

hours per day.  *Badlow*, 205 F.3d at 358.

Although, at one point, the ALJ in *Badlow* did ask the vocational expert to testify concerning the plaintiff's ability to work an eight-hour workday, the focal point of the ALJ's questioning of the VE concerned only a part-time work schedule.  Since the ALJ in *Badlow* never specified in his decision whether the plaintiff could work full-time or not, the Eighth Circuit remanded the case for "clarification" of plaintiff's RFC in light of the Eleventh Circuit's ruling in *Kelley v. Apfel*, 185 F. 3d 1211 (11th Cir. 1999) and its treatment of Social Security Ruling ("SSR") 96-8p.  *Id.*

Social Security Ruling 96-8p provides that residual functional capacity is an assessment of an individual's ability to do sustained work on a "regular and continuing basis," defined as "8 hours a day, for 5 days a week, *or equivalent work schedule*."  SSR 96-8p, 1996 WL 374184 (S.S.A.) (*emphasis added*).  In *Kelley*, the Eleventh Circuit specifically found that a plaintiff's "residual functional capacity [RFC] to stand and/or walk for *up to* 2 hours during an 8-hour workday, and to sit for *up to* 6-hours during an 8-hour workday" meets the necessary hourly requirements to perform full-time work.  *Kelley*, 185 F.3d at 1213 (*emphasis added*).

By finding the Plaintiff can sit at least four (4) to six (6) hours per day and stand/walk for at least two (2) hours per day, the ALJ in the instant case made essentially the same finding concerning the hours Plaintiff can work as the ALJ in *Kelley* did.  The qualifiers "up to" and "at least" in this context are one and the same.  Therefore, the ALJ's findings concerning the hours Plaintiff is capable of working are not ambiguous and comport with a full-time work schedule or its equivalent.

Additionally, the term "regular and continuing basis" as defined by SSR 96-8p fails to support Plaintiff's claim that the ALJ's hour range is incompatible with full-time work. (Doc. #10 at 8). The Ruling states that "a 'regular and continuing basis' means 8 hours a day, for five days a week, *or an equivalent work schedule*." SSR 96-8p, 1996 WL 374184 (S.S.A.) (*emphasis supplied*). This Ruling, by its plain language, contemplates work schedules that do not conform to the standard eight-hour, five day per week format. As in the instant matter, the ALJ in *Kelley* "never found that [the plaintiff] has the residual functional capacity to do only part-time work." 185 F.3d at 1215. Thus, even if the range provided by the ALJ were interpreted to preclude an eight-hour workday, there is no evidence to suggest that an alternative work schedule (such as working less than eight hours per day–six days per week) would render Plaintiff unable to work the equivalent of a full-time schedule or mandate a finding of disabled.

The *Kelley* court further held that where the ALJ's "findings equated to a finding that [the plaintiff] has the ability to do full-time work. . . it is not necessary for [the court] to confront the issue of whether part-time work, as opposed to full-time work, will prevent a claimant from being found disabled at Step Five of the sequential analysis." 185 F.3d at 1215. Here, as supported by the record, the ALJ clearly contemplated only a full-time work schedule or its equivalent when he considered Plaintiff's RFC at Step Five of the sequential evaluation process. Consequently, and for the aforementioned reasons, it is the opinion of this Court that the ALJ's determination of Plaintiff's RFC concerning how many hours per week Plaintiff can work is not ambiguous.

## V. Conclusion

Although the ALJ's decision may not have been as artfully worded as Plaintiff may have wished, a remand would not alter the ALJ's findings nor provide greater clarification. *See Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981) (remand is a "wasteful corrective exercise" when no further findings could be made that would alter the ALJ's decision given the record as a whole).[3]  As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) (2006).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this  6th   day of September, 2007.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.